UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

CHARLES W. JONES,

                                        Plaintiff,

                 - against -

BAY SHORE UNION FREE SCHOOL DISTRICT;
PETER J. DION, Individually and as Superintendent of         Docket No. CV-12-4051 (JS) (GRB)
the Bay Shore Union Free School District; EVELYN
BLOISE HOLMAN, Individually and as the former
Superintendent of the Bay Shore Union Free School
District; and ROBERT PASHKEN, Individually and as
Principal of Bay Shore High School,

                                   Defendants.

------------------------------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AND IN SUPPORT OF CROSS-MOTION TO AMEND



*Attorney for Plaintiff*
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556
(516) 663-6600

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

ALLEGATIONS OF THE AMENDED COMPLAINT ........................................ 3

UNSUPPORTED STATEMENTS ASSERTED BY DEFENDANTS UPON
THIS MOTION TO DISMISS ............................................................................. 6

ARGUMENT ........................................................................................................ 7

    I.    THE AMENDED COMPLAINT SETS FORTH A CLAIM FOR
        THE VIOLATION OF JONES' FIRST AMENDMENT RIGHTS ...................... 7

        A.    RETALIATION ................................................................... 8

        B.    PUBLIC FORUM ............................................................... 12

    II.    THE AMENDED COMPLAINT SETS FORTH CLAIMS FOR
        VIOLATIONS OF DUE PROCESS AND EQUAL
        PROTECTION .................................................................................. 14

        A.    DUE PROCESS ................................................................. 14

        B.    EQUAL PROTECTION ...................................................... 15

    III.    THE SCHOOL DISTRICT IS LIABLE FOR THE ACTS OF ITS
        POLICYMAKERS .............................................................................. 16

    IV.    THE INDIVIDUAL DEFENDANTS ENGAGED IN
        UNLAWFUL CONDUCT AND ARE PROPER PARTIES ................................ 18

    V.    THE AMENDED COMPLAINT STATES CLAIMS UNDER
        NEW YORK STATE'S CONSTITUTION AND COMMON LAW ................... 20

    VI.    PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE A
        SECOND AMENDED COMPLAINT TO CLARIFY
        ALLEGATIONS OF FIRST AMENDMENT RETALIATION .......................... 22

CONCLUSION .................................................................................................... 23

559731\1

i

## TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                      **<u>PAGE</u>**

*City of Chicago v. Morales*
527 U.S. 41 (1999)................................................................................14

*City of Madison, Joint School Dist. No. 8 v.*
*Wisconsin Employment Relations Commission*
429 U.S. 167 (1976)........................................................................12, 13

*Cornelius v. NAACP Legal Defense & Educational Fund*
473 U.S. 788, 797 (1985)........................................................................8

*DiStiso v. Cook*
691 F.3d 226 (2d Cir. 2012)..................................................................20

*Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*
282 F.3d 83 (2d Cir. 2002)....................................................................11

*Dunkel v. Elkins*
325 F.Supp. 1235 (D. MD. 1971) ........................................................14

*Gagliardi v. Village of Pawling*
18 F.3d 188 (2d Cir. 1994)......................................................................9

*Gill v. Pidlychak*
389 F.3d 379 (2d Cir. 2004)....................................................................8

*Hodgkins ex rel. Hodgkins v. Peterson*
355 F.3d 1048, 1056 (7th Cir. 2004) ....................................................11

*Johnson v. Newburgh Enlarged School Dist.*
239 F.3d 246 (2d Cir. 2001)..................................................................18

*Kennedy v. City of Cincinnati*
595 F.3d 327 (6th Cir. 2010) ................................................................14

*Kreimer v. Bureau of Police for Town of Morristown*
958 F.2d 1242 (3d Cir. 1992)................................................................12

*La Trieste Restaurant and Cabaret Inc. v. Village of Port Chester*
40 F.3d 587 (2d Cir. 1994)....................................................................15

*Marchionni v. Drexler*
22 A.D.3d 814 (2d Dep't 2005) ...........................................................................21

*Matter of Donlon v. Mills*
260 A.D.2d 971 (3d Dep't 1999) ..........................................................................16

*Matter of Drozdzal v. Rensselaer City School Dist.*
277 A.D.2d 645 (3d Dep't 2000) ..........................................................................21

*Matter of Goetschius v. Board of Education of Greenburgh Eleven
Union Free School District*
244 A.D.2d 552 (2d Dep't 1997) ..........................................................................22

*Matter of Kamlet v. Board of Educ. of Plainedge Union Free School Dist.*
91 Misc.2d 1105 (Sup. Ct. Nassau Co. 1977) .......................................................12

*McGrath v. Nassau Health Care Corp.*
217 F.Supp.2d 319 (E.D.N.Y. 2002) ....................................................................16

*NAACP v. Button*
371 U.S. 415, 433 (1963) .....................................................................................11

*Nagle v. Marron*
663 F.3d 100 (2d Cir. 2011) .................................................................................19

*Nasso v. Seagal*
263 F.Supp.2d 596 (E.D.N.Y. 2003) ....................................................................

*Patel v. Searles*
305 F.3d 130 (2d Cir. 2002) .................................................................................11

*People ex rel. Arcara v. Cloud Books, Inc.*
68 N.Y.2d 553 (1986) ..........................................................................................20

*Piscottano v. Town of Somers*
396 F.Supp.2d 187, 205 (D. Conn. 2005) .......................................................15, 18

*Police Dep't of the City of Chicago v. Mosley*
408 U.S. 92, 96 (1972) .........................................................................................13

*Puckett v. The City of Glen Cove*
631 F.Supp.2d 226 (E.D.N.Y. 2009) ....................................................................11

*Ritchie v. Coldwater Community Schools*
2012 WL 2862037 (W.D. Mich. July 11, 2012) ...............................................13, 19

*Ronzani v. Sanofi S.A.*
899 F.2d 195 (2d Cir. 1990) ............................................................................................23

*Talley v. Brentwood Union Free School District*
2012 WL 3841396 (E.D.N.Y. Sept. 5, 2012) .................................................................11

*Village of Willowbrook v. Olech*
528 U.S. 562 (2000).........................................................................................................15

*Wayfield v. Town of Tisbury*
925 F.Supp. 880 (D. Miss 1996) .....................................................................................14

## **STATUTES**

42 U.S.C. §1983 ....................................................................................................... *passim*

Federal Rules of Civil Procedure §12(b)(6) .............................................................................2

Federal Rules of Civil Procedure §15a .................................................................................23

New York State Constitution ....................................................................................20, 21

New York State Education Law §1711 ................................................................................5, 16

New York State General Municipal Law ..............................................................................21

New York State Public Officers Law §100 .......................................................................3, 12, 22

U.S. Const. Amend I ................................................................................................ *passim*

U.S. Const. Amend XIV ...............................................................................................2

559718\1

g
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X

CHARLES W. JONES,

                                   Plaintiff,

                - against -

BAY SHORE UNION FREE SCHOOL DISTRICT;
PETER J. DION, Individually and as Superintendent of        Docket No. CV-12-4051 (JS) (GRB)
the Bay Shore Union Free School District; EVELYN
BLOISE HOLMAN, Individually and as the former
Superintendent of the Bay Shore Union Free School
District; and ROBERT PASHKEN, Individually and as
Principal of Bay Shore High School,

                                Defendants.
------------------------------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO DISMISS AND IN
## SUPPORT OF CROSS-MOTION TO AMEND

### Preliminary Statement

Plaintiff, Charles W. Jones ("Jones"), a resident of the Bay Shore Union Free School

District ("School District"), commenced this action against the School District and its current

and former Superintendent, Peter J. Dion ("Dion") and Evelyn Bloise Holman ("Holman"), as

well as the Principal of the Bay Shore High School, Robert Pashken ("Pashken"), because in

retaliation for Jones' outspoken criticism of the School District's policies toward minorities,

including the disproportionate disciplinary actions taken against minority students, Jones was

unilaterally barred from the designated public forum of a public school board meeting.  As a

result, Jones was unable to speak at the school board meeting to present his request that the

School District support a minority parents' organization.  Further, although months later

defendants lifted this outright ban, defendants then implemented a policy requiring Jones to give notice before he could go to future public meetings, a requirement not imposed on any other resident of the School District.

In addition, the Amended Complaint alleges that defendants Dion and Pashken sought to retaliate against Jones for his exercising his First Amendment rights by severely punishing his daughter who attended Bay Shore High School.  Jones' daughter was suspended and prohibited from attending her graduation because of an alleged incident that occurred off of school grounds. Also, the Amended Complaint alleges that defendants' retaliation included their efforts to assert that Jones engaged in "misconduct" when he was employed by the School District over twenty (20) years ago.

The banning of Jones from a public school board meeting and then requiring Jones to give notice before attending future meetings, combined with the retaliation against Jones through the punishment of his daughter, and the assertion that he engaged in misconduct over twenty (20) years ago, clearly give rise to a claim that defendants violated Jones' First Amendment rights, and violations of the Equal Protection and Due Process clauses of the Fourteenth Amendment, as well as state law claims.  Yet, although the Amended Complaint clearly sets forth cognizable claims of §1983 violations and violations of New York State law, defendants nonetheless move to dismiss pursuant to Fed.R.Civ.P. 12(b)6, relying on statements which are nowhere set forth in the Amended Complaint or supported by anything in the record, and as this action proceeds will be demonstrated to be untrue.

For example, the very first sentence in defendants' memorandum of law states that plaintiff "resigned his position and was prohibited from entering district property fifteen years ago as a result of having engaged in certain misconduct during his employment".  There is no

such allegation contained in the Amended Complaint, and there is no evidentiary material submitted to support this allegation, nor could there be. Defendants then go on to claim that the plaintiff "falsely" claims that he was banned from the School District, when the letter that defendants submit upon this motion clearly set forth that they were prohibiting Jones form attending the school board meeting scheduled for December 14, 2011, under threat of arrest.

Simply put, defendants are attempting to defend the indefensible by making up facts and presenting them to the Court as if there is some record that exists which would support their statements. The conduct of defendants in presenting a motion to dismiss is such a manner is highly improper. In any event, as set forth below, the Amended Complaint clearly sets forth the claims asserted therein and should not be dismissed. And, if the Amended Complaint is not clear that Jones actually did not attend the school board meeting on December 14, 2011 as a result of defendants' statements that if he did so he would be arrested, plaintiff seeks leave to file a second amended complaint clarifying the allegations regarding his First Amendment claim and to add a claim for violations of New York State's *Public Officers Law*.

### Allegations of the Amended Complaint

Jones, a lifelong resident of the School District, formed a not-for-profit corporation, Long Island Community Advocates Coalition, Inc. ("LICAC"), in or about 1998 (Amended Complaint ¶ 8, 10). LICAC was formed to be an advocate for minority students attending schools within the School District, as well as providing counseling to individuals suffering from substance abuse and other hardships (Amended Complaint ¶ 11).

As part of Jones' activities, both individually and through LICAC, Jones became an outspoken advocate for minority students, and a critic of the School District, in particularly its

discriminatory conduct toward minorities, including the disproportionate amount of suspensions given to minority students (Amended Complaint ¶ 12).

Jones regularly appears on television programs on Public Access, often commenting on issues facing the School District, and in particular, the discriminatory conduct by the School District personnel toward minority students (Amended Complaint ¶ 13). Jones also speaks at community meetings regarding racial issues within the School District, and has sought to organize ministers from local churches to correspond with the School District requesting that the School District hire more African American teachers and provide after hours extra curricular programs for minority students (Amended Complaint ¶ 14-15).

In 2011, Jones met with Dion, who was the newly appointed Superintendent of the School District, and discussed the disproportionate punishment given to minority students by the School District, and Jones provided Dion with a national report regarding this issue (Amended Complaint ¶ 17). Jones also told Dion that he was going to speak at an upcoming Board of Education meeting to request that the School District support a minority parents' organization. The purpose of the organization would be to encourage the parents of minority students within the School District to become more involved with school activities (Amended Complaint ¶ 20).

Shortly after telling Dion that he was going to attend the school board meeting, and on the same date as the scheduled meeting, Jones received a letter from Dion, on behalf of the School District, stating that he was not permitted on the property of the School District, and if he went to that night's School Board meeting, he would be subject to arrest (Amended Complaint ¶ 21; *see also* Exhibit C to the Declaration of Steven Stern dated November 19, 2012 "Stern

Declaration").[1]  The School District's letter also states that the School District, when defendant Holman was Superintendant, adopted a policy barring plaintiff from School District property.

The School District never provided Jones with the process to contest such a ban, and he was never informed of the specific reasons for such a ban (Amended Complaint ¶ 23).  And, although months **after** the school board meeting that Jones wished to attend, the School District sent a letter apparently revising its position to say that Jones could come onto School District property provided he gave advanced notice to Dion (Amended Complaint ¶ 24; *see also* Exhibit C to the Stern Declaration), as set forth in the Amended Complaint, this condition was not placed on any other resident of the School District (Amended Complaint ¶ 24).

Further, at about the same time, Jones was further retaliated against by the School District when Dion and Pashken sought to interfere with the intimate association with his daughter by suspending his daughter first through a principal's suspension, and then a superintendent suspension by Dion (Amended Complaint ¶ 26, 28).  The initial principal suspension was given without Jones being provided with the ability to meet with the Principal as required by New York's *Education Law*, and at the superintendent's disciplinary hearing Jones was threatened that if he did not consent to a suspension for the remainder of the school year, the School District would not provide his daughter with home instruction, as was the School District's customary practice, and she would not receive her high school diploma (Amended Complaint ¶ 28-29).  Finally, the Amended Complaint also alleges that Jones was retaliated against for his First Amendment activity by defendants asserting that he was guilty of "misconduct" when he was employed by the School District (Amended Complaint ¶ 25).

---

[1]  As stated below, Jones cross-moves for leave to file a Second Amended Complaint to clarify that as a result of defendant's telling Jones he was not permitted to attend the December 14, 2011 school board meeting, and if he tried to he would be arrested, Jones did not attend the meeting as he had planned

The Amended Complaint asserts Section 1983 claims for violations of Jones' First Amendment rights, as well as due process and equal protection claims, and claims under the Constitution and common law of the State of New York.

### Unsupported Statements Asserted by
### Defendants upon this Motion to Dismiss

In the first sentence of their memorandum of law, defendants assert that Jones "resigned his position and been prohibited from entering district property fifteen years ago as a result of having engaged in certain misconduct during his employment" (Defendant's Memorandum of Law P.1).  No reference to any portion of the Amended Complaint is provided by the defendants, nor is any reference made to anything in the record.  In fact, Jones was last employed by the School District in 1985 -- twenty-six (26) years prior to Dion's letter -- and he was not prohibited from entering School District property, nor did he engage in "certain misconduct".

Then, the first sentence of the next paragraph of defendants' memorandum of law states that Jones' daughter was suspended for "brutally attacking" another student (Defendant's Memorandum of Law P. 1).  Again, nowhere in the Amended Complaint or any other part of the record before this Court is it stated that plaintiff's daughter "brutally attacked" another student.  Further, the Amended Complaint does not state that his daughter was suspended for assaulting another student.

Finally, defendants assert in a footnote that plaintiff was employed by the School District as a Junior Varsity Boys Football and Junior Varsity Girls Softball coach at Bay Shore High School, and that he departed employment in 1985 in connection with a disciplinary matter, the subject of which would not be disclosed given a vague confidentiality provision (Defendant's Memorandum of Law P. 3, fn 1).  Any suggestion that Jones was found to have engaged in any

wrongful conduct is not supported by any allegation in the Amended Complaint, or any other citation to the record before this Court, and is simply false.

Defendants' efforts to serendipitously insert unsupported statements of fact into this motion to dismiss is not simply a disingenuous and improper litigation tactic, but also reflects on the School District's conduct toward Jones. Even in the context of this litigation, the School District is trying to discredit and defame Jones because he seeks to protect his right to criticize the School District's conduct toward minority students, and to defend his right to attend public Board of Education meetings.

**ARGUMENT**

**POINT I**

**THE AMENDED COMPLAINT SETS FORTH A CLAIM FOR THE VIOLATION OF JONES' FIRST AMENDMENT RIGHTS**

As set forth in the Amended Complaint, in retaliation of Jones' criticism of the School District's policies directed at minority students, and after Jones told Dion that he was going to attend an upcoming school board meeting, Jones was told by Dion that he was not permitted to attend the public meeting scheduled for December 14, 2011. Further, Jones was informed by Dion that if he tried to attend the meeting he would be subject to arrest. And, while **months later** Dion stated that Jones could attend school board meetings if he gave advance notice, this was after the meeting in question took place, and the School District did not impose the requirement to give advance notice on any other resident of the School District

A Section 1983 First Amendment retaliation claim is stated if the speech or conduct at issue is protected by the First Amendment, adverse actions are taken against the plaintiff, and defendants' actions either effectively chilled the exercise of his First Amendment rights or the plaintiff incurred an injury from the retaliation separate from the chilling of his First Amendment

- 7 -

rights (*See e.g. Gill v. Pidlychak*, 389 F.3d 379 [2d Cir. 2004]).  In addition, a Section 1983

claim is also stated if a state action improperly restricts First Amendment activity, and whether a

First Amendment activity is improperly restricted depends on whether the plaintiff's speech is

protected by the First Amendment, the nature of the forum, and whether there is sufficient

justification for limiting the plaintiff's First Amendment activity.  *Cornelius v. NAACP Legal*

*Defense & Educational Fund*, 473 U.S. 788, 797 (1985).

Here, the Amended Complaint sets forth facts that Jones was retaliated against for his

outspoken criticism of the School District's policies toward minority students.  The Amended

Complaint also sets forth that he was impermissibly barred from public school board meetings.

Accordingly, the Amended Complaint clearly alleges a §1983 claim for the deprivation of

plaintiff's First Amendment rights.

A.      **Retaliation**

As alleged in the Amended Complaint, defendants retaliated against Jones for his

criticism of the School District's policies toward minorities by banning Jones from School

District property, including by first prohibiting him from attending school board meetings,

including the one scheduled for December 14, 2011, and then requiring that before Jones could

attend a meeting he would have to provide notice.  The Amended Complaint further alleges that

Jones was retaliated against by defendants severely punishing his daughter for an incident

occurring off school grounds, and by their assertion that Jones had engaged in wrongful conduct.

Accordingly, the Amended Complaint sets forth a claim of retaliation for Jones

exercising his First Amendment rights.  Clearly, Jones' public criticism, including through a

television program, of the School District's treatment of minority students is speech and conduct

protected by the First Amendment, and the barring of Jones from school board meetings under

the threat of arrest, excessively punishing his daughter, and then asserting that Jones had engaged in some unspecified wrongful conduct twenty-six (26) years ago, constitute adverse actions against Jones.  Finally, Jones was prohibited from the school board meeting held on December 14, 2011 where he wanted to discuss the establishment of a minority parents organization, thus his free speech rights were actually chilled.

Initially, the contention by defendants that Jones has not alleged enough specificity to state a plausible retaliation claim is wholly without merit.  Jones has alleged the specific First Amendment activity he engaged in, and that his being barred from the public school board meetings and that the action taken against his daughter and the statements made about him were in retaliation for his criticism of the School District.  Upon a motion to dismiss, those allegations are clearly sufficient.

The Second Circuit, in *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994), reversed the dismissal of a First Amendment retaliation claim, and explained:

> The final federal claim pleaded by the Gagliardis in the complaint is predicated on the allegation that the Municipal Defendants' failure to enforce the Code against Lumelite and their acts of misconduct regarding certain zoning decisions were in retaliation for the Gagliardis' exercised of their right to free speech.  To establish a retaliation claim under section 1983, a plaintiff "initially [must] show that [his] conduct was protected by the first amendment," *Brady*, 863 F.2d at 217, and that defendants' conduct was motivated by or substantially cause by his exercise of free speech, *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *see also Mount Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 284-85, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977) (government employee stated claim for wrongful discharge in retaliation for engaging in protected speech); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*,964 F.2d 32, 40-45 (1st Cir. 1992) (plaintiff stated claim that officials denied permits in retaliation for political views of plaintiff).

The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988); **\*195** *McCoy v. Goldin*, 598 F.Supp. 310, 314 (S.D.N.Y. 1984), *see United Mine Workers v. Illinois Bar Assoc.*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967) (the right "to petition for a redress of grievances [is] among the most precious of liberties safeguarded by the Bill of Rights" and is "intimately connected … with the other First Amendment rights of free speech and free press"). Here, the Gagliardis commenced Article 78 proceedings and attended public meetings and hearings of the Board of Trustees, the Planning Board and the ZBA to voice their concerns about the alleged violations. They also complained to Building Inspector Jackson. This conduct clearly is protected by the First Amendment.

We also conclude that the Gagliardis adequately have pleaded the requisite nexus between the exercise of their First Amendment rights and subsequent retaliatory conduct b the Municipal defendants. **The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint.** *See Murphy v. Lane*, 833 F.2d 106, 108 (7ᵗʰ Cir. 1987) (per curiam); *McDonald v. Hall*, 610 F.2d 16, 18 1ˢᵗ Cir. 1979). **Indeed, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind … may be averred generally."** While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred. *See Murphy*, 833 F.2d at 108; *see also Harris v. Eichbaum*, 642 F.Supp. 1056, 1065 (D.Md. 1986) (if plaintiff alleges facts regarding defendant's state of mind that, if proven, constitute a constitutional violation, the parties should proceed to discovery). (emphasis supplied)

Here, the Amended Complaint sets forth that Jones was an outspoken critic of the School Districts policies toward minority students, and immediately after meeting with Dion to complain about the treatment of minorities and when he told Dion he was planning to attend the December 14, 2011 school board meeting to talk about the creation of a minority parents organization, Jones was informed he could not attend the meeting under threat of arrest, and then Jones' daughter was severely punished for an off school grounds incident. At the pleading

stages, these allegations raise an inference of retaliation and support a First Amendment claim. *See also Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002); *Puckett v. The City of Glen Cove*, 631 F.Supp.2d 226 (E.D.N.Y. 2009).

Upon their motion to dismiss, defendants assert that Jones cannot maintain a First Amendment retaliation claim because his speech was not actually chilled.  This argument simply ignores that Jones was denied his right to attend and speak at the December 14, 2011 school board meeting.  Jones was told he could not attend the meeting, nor address the school board, and if he did try to attend he would be subject to arrest.  Accordingly, since Jones could not attend the December 14, 2011 meeting, and has not attended any school board meetings since, his First Amendment rights were actually chilled.  *See also NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter the [ ] exercise [of free speech] almost as potently as the actual application of sanctions"); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("a realistic threat of arrest is enough to chill First Amendment rights").

In addition, Jones also suffered concrete injury which would support a retaliation claim regardless of whether his First Amendment rights were "chilled".  As alleged in the Amended Complaint, Jones' relationship with his daughter was interfered with when his daughter was singled out for severe punishment so as to retaliate against Jones for this criticism of the School District.

As to defendants' contention that Jones does not have standing to assert claims for his daughter injuries, while true, misinterprets the nature of Jones' claims.  Jones is not seeking to assert a claim for his daughter's injuries, but is alleging that the punishment of his daughter was part of the retaliation directed at Jones. *See Patel v. Searles*, 305 F.3d 130 (2d Cir. 2002); *Talley v. Brentwood Union Free School District*, 2012 WL 3841396 (E.D.N.Y. Sept. 5, 2012)

("parent/child relationship [is] … among the most intimate … warranting the highest level of constitutional protection").

Accordingly, the Amended Complaint sets forth specific factual allegations that Jones was retaliated against because of his criticism of the School District's conduct toward minorities. As a result, defendants' motion to dismiss, where the inferences that can be drawn from the factual allegations must be drawn to the benefit of plaintiff, should be denied.

**B.    Public Forum**

As alleged in the Amended Complaint, and as confirmed by the documents attached to defendants' motion to dismiss, Jones was prohibited from attending the public school board meeting held on December 14, 2011. Further, Jones was thereafter prohibited from attending future public school board meetings without giving advance notice. These restrictions on Jones' right to attend school board meetings violated Jones' First Amendment rights.

New York State *Public Officer Law* §100 *et seq* expressly requires that all school board meetings be open to the public except for specific circumstances wherein an executive session is permitted. *Matter of Kamlet v. Board of Educ. of Plainedge Union Free School Dist.*, 91 Misc.2d 1105 (Sup. Ct. Nassau Co. 1977). In addition, school board meetings are a public forum whereat taxpayers can express their views and obtain information. *See e.g.*, *City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167 (1976). Further, in that the School District has made its property available to the general public for such events as parent-teacher conferences, the School District has created a limited public forum for these events. *See e.g.*, *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) (library limited public forum because the library is open to the public).

- 12 -

As a result, defendants were not permitted to unilaterally impose restrictions on Jones' ability to attend school board meetings.  There was no specific rationale given for the restrictions, and they were only imposed on Jones, being done so after he stated he wanted to discuss the creation of a minority parents organization and after he expressed criticism of the School District's conduct toward minority students.  Accordingly, the restrictions were clearly content based, and were not reasonable time, place and manner regulations.  As a result, the Amended Complaint clearly sets forth a claim that Jones' First Amendment rights were violated. *See e.g. City of Madison*, 429 U.S. at 176 (government body may not discriminate among speakers on the bases of their speech); *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (government may not grant the use of a forum to people whose views it finds acceptable, but deny use of those wishing to express less favored or more controversial views); *Ritchie v. Coldwater Community Schools*, 2012 WL 2862037 (W.D. Mich. July 11, 2012) (plaintiff who was cut off from speaking at school board meeting stated First Amendment claim).

And, although defendants will no doubt argue that Jones was not prohibited from attending school board meetings because of what he intended on saying, but because of some undisclosed incident that occurred twenty-six (26) years ago when he was a School District employee, this defense only raises an issue of fact as to the intent of the defendants.  While this defense will be established as meritless, at the pleading states it does not justify dismissing plaintiff's First Amendment claim.  Accordingly, defendants' motion to dismiss Jones' claim for violations of his First Amendment rights should be denied.[2]

---

[2]   Defendants' September 10, 2012 letter seeking a pre-motion conference (Docket Entry 7) indicates that they would not seek dismissal of plaintiff's First Amendment claim.

## POINT II

## THE AMENDED COMPLAINT SETS FORTH CLAIMS FOR VIOLATIONS OF DUE PROCESS AND EQUAL PROTECTION

**A.    Due Process**

Jones was barred from attending the December 14, 2011 school board meeting and was otherwise excluded from School District property that is made accessible to the public based on some unspecified "historical" reason. Jones was never given notice and an opportunity to be heard prior to the institution of this ban. Accordingly, Jones has been deprived of a liberty interest without any process whatsoever.

Under well settled law, a governmental entity cannot prohibit an individual from government owned property that is open to the public without some process. Prior to an individual being deprived of his ability to access government property that is made available to the general public, the individual must be given some notice and an opportunity to be heard.

For example, in *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010), the Court held that confiscation of an individual pool pass for allegedly "lurking" without some type of hearing violated the individual's procedural due process right. The Sixth Circuit, relying on *City of Chicago v. Morales*, 527 U.S. 41 (1999), explained that the individual had a liberty interest to remain in a public place of his choice which could only be restricted if some type of process takes place.

Similarly, in *Wayfield v. Town of Tisbury*, 925 F.Supp. 880 (D. Miss 1996), a town's suspending a resident's library privileges due to alleged disruptive conduct was held to violate due process because no pre-deprivation hearing was provided. *See also Dunkel v. Elkins*, 325 F.Supp. 1235 (D. MD. 1971) (an individual entitled to a hearing before being banned from a state campus).

Here, without any process whatsoever, Jones was banned from School District property based on some vague unspecified history. Worse still, this ban included public school board meetings. Jones was never provided notice with specifically why he was banned, nor was he given an opportunity to contest the ban. Accordingly, the Amended Complaint sets forth a due process violation.

**B.      Equal Protection**

As set forth in the Amended Complaint, defendants initially banned Jones from attending public school board meetings, and then months after the meeting he wanted to attend, Jones was told that he could only attend school board meetings if he gave advance notice. The Amended Complaint further alleges that this requirement for prior notice was as a result of Jones' criticism of the School District's treatment of minority students, and was not imposed on any other resident of the School District.

An equal protection claim can be maintained if a person, compared with others similarly situated, is selectively treated, and the selective treatment is based in impermissible consideration such as intent to inhibit or punish the exercise of a constitutional right. *La Trieste Restaurant and Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587 (2d Cir. 1994); *see also Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Further, selective enforcement of restrictions on First Amendment activities will support a claim for an equal protection violation. *Piscottano v. Town of Somers*, 396 F.Supp.2d 187, 205 (D. Conn. 2005).

Here, the Amended Complaint alleges that a special rule that only applied to Jones was instituted by defendants, and was not imposed on any other residents of the School District, i.e. individuals similarly situated. Further, the Amended Complaint alleges that the special rule was implemented to punish Jones for his outspoken criticism as to how the School District treated

- 15 -

minorities, including the disproportionately severe punishment of minority students.

Accordingly, the Amended Complaint clearly sets forth an equal protection claim.

**POINT III**

**THE SCHOOL DISTRICT IS LIABLE FOR THE ACTS OF
ITS POLICY MAKERS**

As flatly admitted, Dion and his predecessor as Superintendent, Holman, the chief

executive officers of the School District, decided on behalf of the School District that Jones

would not be permitted on School District property, and decided to ban Jones from attending

school board meetings, including the one scheduled for December 14, 2011.  As Superintendents

of the School District, Dion and Holman are or were clearly policymakers for the School

District. See New York State *Education Law*, §1711 [Superintendent is Chief Executive Officer

of the School District]; *Matter of Donlon v. Mills*, 260 A.D.2d 971 (3d Dep't 1999).

Accordingly, the School District can be held liable for their actions.

For example, in *McGrath v. Nassau Health Care Corp.*, 217 F.Supp.2d 319 (E.D.N.Y.

2002), the Court denied a motion to dismiss a municipal corporation from an action alleging,

*inter alia*, a First Amendment retaliation claim.  The Court explained:

> A municipal custom or policy need not be expressly stated in a
> written statute to be actionable.  *Sorlucco v. New York City Police
> Dep't*, 971 F.2d 864, 870 (2d Cir. 1992); *Ricciuti v. New York City
> Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  A municipal
> custom or policy may instead be shown by " 'circumstantial proof,
> such as evidence that the municipality so failed to train its
> employees as to display a deliberate indifference to the
> constitutional rights of those within its jurisdiction.'" *DeCarlo v.
> Fry*, 141 F.3d 56, 61-62 (2d Cir. 1998) (quoting *Ricciuti*, 941 F.2d
> at 123); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.
> 1996); *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996).  A
> municipal custom or policy may also be shown by "persistent and
> widespread" constitutional violations that are so pervasive that
> policy makers may be presumed to have acquiesced to those
> practices. *See Herrera v. Safir*, 17 Fed.Appx. 41, 43 (2d Cir.

2001); *Jeffes*, 208 F.3d at 61; *Sorlucco*, 971 F.2d at 870-71. **Finally, actions taken by persons whose activities reflect official policy may constitute a custom or policy for §1983's purposes.** *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jeffes v. Barnes*, 208 F.3d 49, 56; (2d Cir. 2000); *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 137 (2d Cir. 1999).

Construing the facts and inferences in the light most favorable to her, *see Wall*, 18 Fed.Appx. at 42, McGrath has demonstrated that NHCC maintained a custom or policy that: (1) permitted Rosenblum to retaliate against her for exercising her First Amendment rights; and (2) that impermissibly chilled her First Amendment rights.

First, McGrath's reassignment may have been directed by officials responsible for establishing NHCC's sexual harassment redress policies. *See* **\*331** *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. **Newman, the Medical Center's chief executive officer, and Savinetti, its general counsel, fomented her transfer, and are arguably persons in policymaking positions who deal with those matters.** *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. If Newman and Savinetti are not officials responsible for establishing policy, discovery may bear out that their purported practice of immediately reassigning alleged sexual harassment victims may have been so "persistent and widespread" that policy makers may be said to have sanctioned those practices. *See Herrera*, 17 Fed.Appx. at 43; *Jeffes*, 208 F.3d at 61; *Sorlocco*, 971 F.2d at 870-71.

**Secondly, Rosenblum, as chairman of the NHCC board of directors, is a person whose activities may well be said to reflect official NHCC policy, which may in turn make sexual harassment a NHCC custom or policy for §1983's purposes.** *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Jeffes*, 208 F.3d at 56; *Wimmer*, 176 F.3d at 137. Alternatively, NHCC policymakers may have so failed to train Rosenblum about sexual harassment laws that NHCC policy makers were deliberately indifferent to the constitutional rights of their employees. *see DeCarlo*, 141 F.3d at 61-62; *Gottlieb*, 84 F.3d at 518; *Kern*, 93 F.3d at 44; *Ricciuti*, 941 F.2d at 123.

Accordingly, construing the facts and inferences in her favor, *see Wall*, 18 Fed.Appx. at 42, McGrath has pled that her First Amendment rights were violated because of a NHCC custom or

policy.  Therefore, NHCC's Motion to  Dismiss McGrath's First
Amendment claims must be denied. (emphasis supplied)

Here, the Superintendent defendants were the chief executive officer of the School

District.  These superintendents instituted a ban of Jones from School District property, including

public school board meetings, as set forth in the letters attached as Exhibit C to the Stern

Declaration.  As such, their actions constitute a policy adopted by the School District, or at the

minimum create a factual issue as to the School District's liability.  *See Piscottano v. Town of*

*Somers*, 396 F.Supp.2d 187 (D. Conn. 2005) (issue of fact as to whether an individual

defendant's prohibition of plaintiff from speaking at a town board meeting was a town policy).

## POINT IV

### THE INDIVIDUAL DEFENDANTS ENGAGED IN
### UNLAWFUL CONDUCT AND ARE PROPER PARTIES

As set forth in the Amended Complaint, Dion prohibited Jones from attending a public

school board meeting in retaliation for Jones' public comments about the School District's

treatment of minority students, going so far as threatening to arrest Jones if he appeared on

school grounds, and the barring of Jones from School District property was allegedly first

implemented by Holman.  Pashken suspended Jones' daughter in retaliation for Jones exercising

his First Amendment rights.  Accordingly, all of the named individual defendants directly

participated in the §1983 violations had have been properly named.  *See e.g. Johnson v.*

*Newburgh Enlarged School Dist.*, 239 F.3d 246 (2d Cir. 2001).

As for any claim of qualified immunity, as explained above, the Amended Complaint sets

forth claims of constitutional violations, and that the individual defendants participated in these

violations.  Accordingly, defendants' contention that qualified immunity applies because there

are no allegations of a constitutional violation is without merit.

Further, the right of an individual to be free from retaliation for exercising his or her First Amendment rights is well established and should have been clearly known by the defendants. *See e.g. Ritchie*, 2012 WL 2862037 at *13 ("As of June 11, 2010, the law was clearly established both as to a citizen's right to attend a school board meeting and that a threat of arrest which chills the exercise of such right can give rise to a constitutional violation"). And, as the Second Circuit has held, it is not necessary in order to defeat a qualified immunity defense that the specific wrongful conduct has previously been held illegal. The Second Circuit, in *Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011), explained:

> At the same time, the standard must not be so specific that qualified immunity could be overcome only if "the very action in question has previously been held unlawful." *Id.* Rather, "the unlawfulness" of the alleged action "must be apparent" to a reasonable official "in the light of pre-existing law." *Id., see also Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").
>
> The "subjective good faith of government officials" plays no part in the inquiry. *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727. Our "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained [official] would have known that [his conduct] was illegal." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092 (internal quotation marks omitted). "Implicit in the recognition that they may err" and a determination that "it is better to risk some error ... than not to ... act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 242, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated by Harlow*, 457 U.S. 800, 102 S.Ct. 2727 (1982). The objective inquiry allows room for error by guaranteeing officials "immunity for reasonable mistakes as to the legality of their actions," **115** *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151, but not for unreasonable mistakes, which should be prevented by an official's knowledge of the "law governing his conduct," *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. The reasonableness of the official's action, in turn, is "assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Anderson*, 483 U.S. 1t 639, 107 S.Ct. 3034 (internal quotation marks and citation omitted). The focus therefore remains on whether, at the time of the alleged conduct, the right was clearly established, rendering it objectively

unreasonable for an official to think that his action was lawful.  *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 n. 11 (2d Cir. 2009) (noting that an official "who violates clearly established law necessarily lacks an objectively reasonable belief that his conduct was lawful"); *Locurto*, 264 F.3d at 169 ("[I]t can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law.").

Here, it would not be reasonable for defendants to believe they could single out then retaliate against Jones because he was criticizing the School District for the way they treated minority students.  It would also not be reasonable for Dion or Holman to believe it was permissible for them to unilaterally decide who could attend a public school board meeting, and then could exclude individuals who criticize the School District.  Accordingly, upon this motion to dismiss, the individual defendants have not demonstrated that the claims against them should be dismissed based on qualified immunity.  *See also DiStiso v. Cook*, 691 F.3d 226 (2d Cir. 2012).

## POINT V

### THE AMENDED COMPLAINT STATES CLAIMS UNDER NEW YORK STATE'S CONSTITUTION AND COMMON LAW

The New York State Constitution, like the First Amendment of the United States Constitution, prohibits governmental conduct which burdens the exercise of free speech.  As the New York State Court of Appeals, in *People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553 (1986), explained:

> It is established in this State that the government may not impose a prior restraint on freedom of expression to silence an unpopular view, absent a showing on the record that such expression will immediately and irreparably create public injury (*East Meadow Community Concerts Assn. v. Board of Educ.*, 18 N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E.2d 172).  It is also settled that when government regulation designed to carry out a legitimate and important State objective would incidentally burden free

expression, the government's action cannot be sustained unless the State can prove that it is no broader than needed to achieve its purpose (*Matter of Nicholson v. State Commn. on Judicial Conduct*, 50 N.Y.2d 597, 431 N.Y.S.2d340, 409 N.E.2d 818; *People v. Taub*, 37 N.Y.2d 530, 375 N.Y.S.2d 303, 337 N.E.2d 754). Although these holdings were based essentially on First Amendment principles, they are equally applicable under the State Constitution, since "at the very least, the guarantee of freedom of expression set forth in our State Constitution is of no lesser vitality than that set forth in the Federal Constitution" (*Bellanca v. State Liq. Auth.*, 54 N.Y.2d 228, 235, 445 N.Y.S.2d 87, 429 N.E.2d 765).

Here, as explained above, the defendants retaliated against Jones for his outspoken criticism of the School District by barring him from public school board meetings, and by imposing disproportionately harsh punishment upon his daughter. Accordingly, the Amended Complaint states claims under both §1983 and the New York State Constitution.

The Amended Complaint also states a state tort claim of intentional infliction of emotional distress. The defendants' vendetta did not only seek to harm plaintiff, but also attacked his daughter. Then, when Jones sought to protect his rights, the defendants asserted that Jones was guilty of some unspecified wrongful conduct to justify their actions. This alleged conduct by the defendants is sufficiently severe to state a claim of intentional infliction of emotional distress. *See e.g. Marchionni v. Drexler*, 22 A.D.3d 814 (2d Dep't 2005).

Finally, defendants' argument that because plaintiff did not label his state law causes of action in his notice of claim they are prohibited is without merit. There is nothing in New York's *General Municipal Law* that requires that the legal theories to be advanced by a plaintiff must be set forth in the notice of claim. The notice of claim here sets forth the factual predicate of the claims and is thus sufficient. *See e.g. Matter of Drozdzal v. Rensselaer City School Dist.*, 277 A.D.2d 645 (3d Dep't 2000).

## POINT VI

### PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE A SECOND AMENDED COMPLAINT TO CLARIFY ALLEGATIONS OF FIRST AMENDMENT RETALIATION

The Amended Complaint alleges that Jones was told by Dion that he could not attend the December 14, 2011 school board meeting, and as the documents attached to defendants' motion confirm, this directive was accompanied with a threat that Jones would be arrested if he tried to attend.  While implicit in the allegations of the Amended Complaint is the fact that Jones did not actually attend the December 14, 2011 meeting, or any meeting thereafter, Jones seeks leave to file a Second Amended Complaint to clarify the allegations that Jones did not attend the meetings, and that the barring of Jones from the meetings was in retaliation of his criticism of the School District and based on the content of what he was going to say.  Thus, the Second Amended Complaint will simply clarify that Jones' First Amendment rights were actually "chilled".

The Second Amended Complaint would also add a claim under New York *Public Officers Law*.  New York law requires that public school board meetings be open to all the public, and a school district violates New York law if an individual is wrongfully barred from a public meeting.  Accordingly, based on the facts already alleged, Jones states a claim for violating New York's *Public Officers Law*. *See Matter of Goetschius v. Board of Education of Greenburgh Eleven Union Free School District*, 244 A.D.2d 552 (2d Dep't 1997).

There is no prejudice to defendants by permitting the amendment since discovery has not even commenced, and the proposed amendment will simply clarify the already plead factual allegations and state a claim that arises from the already plead allegations.  Thus, plaintiff's cross-motion for leave to file a Second Amended Complaint, which is attached as Exhibit A to

the Affirmation of E. Christopher Murray dated December 18, 2012, pursuant to Fed.R.Civ.P.

15a and the interest of justice should be granted. *See e.g. Ronzani v. Sanofi S.A.*, 899 F.2d 195

(2d Cir. 1990); *Nasso v. Seagal*, 263 F.Supp.2d 596 (E.D.N.Y. 2003).

## Conclusion

For the reasons set forth above, defendants' motion to dismiss should be denied in its

entirety, and plaintiff's cross-motion for leave to amend should be granted.

Dated: Uniondale, New York
      December 19, 2012

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____

E. Christopher Murray
*Attorney for Plaintiff*
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556
(516) 663-6600

558467\1