UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CHARLES W. JONES,

                     Plaintiff,                MEMORANDUM & ORDER
                                               12-CV-4051(JS)(GRB)

        -against-

BAY SHORE UNION FREE SCHOOL
DISTRICT; PETER J. DION,
Individually and as Superintendent
of the Bay Shore Union Free School
District; EVELYN BLOISE HOLMAN,
Individually and as the former
Superintendent of the Bay Shore
Union Free School District; ROBERT
PASHKEN, Individually and as
Principal of Bay Shore High School,

                     Defendants.
----------------------------------------X

APPEARANCES
For Plaintiff:       E. Christopher Murray, Esq.
                    Ruskin Moscou Faltischek, P.C.
                    East Tower, 15th Floor
                    1425 RXR Plaza
                    Uniondale, NY 11556

For Defendants:      Steven C. Stern, Esq.
                    Susan Hull Odessky, Esq.
                    Sokoloff Stern LLP
                    179 Westbury Avenue
                    Carle Place, NY 11514

SEYBERT, District Judge:

        Currently pending before the Court is Defendants Bay

Shore Union Free School District (the "District"), Peter J. Dion

("Dion"), Evelyn Bloise Holman ("Holman"), and Robert Pashken's

("Pashken" and collectively, "Defendants") motion to dismiss the

Amended Complaint.  Also pending before the Court is Plaintiff

1

Charles W. Jones' ("Plaintiff") cross-motion to amend. For the following reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART and Plaintiff's cross-motion to amend is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiff commenced this action on August 14, 2012 against Defendants alleging claims pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights secured by the First and Fourteenth Amendments and for deprivation of Plaintiff's equal protection and due process rights secured by the Fourteenth Amendment. Plaintiff also claims that Defendants deprived him of his rights secured by the New York State Constitution. Finally, Plaintiff claims that Defendants "intentionally sought to humiliate plaintiff and cause him emotional distress by falsely alleging wrongful conduct by plaintiff which purportedly occurred over two decades ago, and by defendants' other wrongful conduct." (Am. Compl. ¶ 48.)

Plaintiff is a resident in the District and his daughter attended Bay Shore High School. (Am. Compl. ¶¶ 8, 19.) In or about 1998, Plaintiff formed a not-for-profit corporation called Long Island Community Advocates Coalition, Inc. ("LICAC") which advocates for minority children in the District. (Am.

_____

[1] The following facts are taken from Plaintiff's Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

Compl. ¶¶ 10-11.)  Through his association with LICAC, Plaintiff

has become known as an outspoken critic of the District,

particularly after a meeting between Plaintiff and Defendant

Dion in 2011 during which Plaintiff provided Dion with a

national report regarding disproportionate punishment given to

minority students.  (Am. Compl. ¶¶ 17-18.)

Plaintiff alleges that Defendants have retaliated

against Plaintiff as a result of his criticism of the District.

(Am. Compl. ¶ 19.)   For example, in December 2011, Plaintiff

informed Dion that he would like to speak at an upcoming Board

of Education meeting regarding a minority parents organization.

(Am. Compl. ¶ 20.)  Thereafter, Plaintiff received a letter from

Dion, on behalf of the District and reflecting a policy adopted

by Defendant Holman, stating that Plaintiff was not permitted on

District property.  (Am. Compl. ¶¶ 21-22.)   According to

Plaintiff, this "policy" was the result of accusations by

Defendants that Plaintiff had engaged in inappropriate conduct

while he was employed by the District over twenty years ago.

(Am. Compl. ¶¶ 19, 25.)  The District subsequently revised its

policy to allow Plaintiff on District property if he had advance

permission from Dion.  (Am. Compl. ¶ 24.)   However, no other

residents are subject to such a policy.  (Am. Compl. ¶ 24.)

In addition to this policy, Plaintiff alleges other

discriminatory and retaliatory conduct by Defendants.   In or

about February 2012, Plaintiff's daughter, Damalii, was involved in an altercation with another female student. (Am. Compl. ¶ 27.) Plaintiff claims that the District, Dion, and Pashken retaliated against Plaintiff when Pashken gave Damalii a principal suspension without a prior meeting with Plaintiff and Dion subjected Damalii to a superintendent suspension. (Am. Compl. ¶¶ 26, 28.) At the superintendent's hearing, Plaintiff "was threatened that if he did not consent to a suspension for the remainder of the school year, the School District would not provide Damalii with home instruction, as was the School District's customary practice, and she would not receive her high school diploma." (Am. Compl. ¶ 29.) Plaintiff did not consent, and the District relied on the consent of Damalii's mother, who was not Damalii's custodial parent. (Am. Compl. ¶ 30.)

## DISCUSSION

Defendants move to dismiss the Amended Complaint because: (1) Plaintiff failed to state plausible First Amendment, Due Process, and Equal Protection claims, (2) the individual defendants should be dismissed from the action, (3) Plaintiff failed to state a plausible Monell claim against the District, and (4) Plaintiff's state law claims should be dismissed for a variety of reasons. Plaintiff has cross-moved to amend the Complaint. Plaintiff's proposed Second Amended

Complaint ("SAC") primarily tracks the Amended Complaint. Accordingly, the Court's discussion will focus on the allegations in the Amended Complaint and will note the differences when relevant. The Court will first discuss the standard of review before turning to Defendants' arguments.

## I. Legal Standards

### A. Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

B. <u>Motion to Amend</u>

Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See <u>Milanese v. Rust–Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal</u>, 282 F.3d 83, 88 (2d Cir. 2002).

II. <u>First Amendment Claims</u>

The Amended Complaint raises two theories of First Amendment liability: (1) retaliation; and (2) intimate association. In addition, Plaintiff's opposition brief raises a First Amendment claim for Defendants' impermissible content-based restriction on speech in a limited public forum. The Court will independently address these theories.

A. <u>First Amendment Retaliation</u>

Plaintiff alleges that Defendants retaliated against him for expressing criticism of the District by prohibiting Plaintiff from entering District property or attending Board meetings, accusing Plaintiff of having engaged in inappropriate

conduct while employed with the District approximately twenty years ago, and disproportionately punishing his daughter.

Generally, a private citizen bringing a First Amendment retaliation claim must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Defendants primarily argue that Plaintiff has not sufficiently alleged any "actual chill." Even if Plaintiff has asserted actual chill, however, Defendants further argue that Plaintiff cannot show that Defendants' actions were substantially motived by Plaintiff's speech. Finally, Defendants also challenge one of the bases for Plaintiff's retaliation claim, arguing that Plaintiff cannot state a retaliation claim based on the discipline of his daughter. The Court will address each of these arguments in turn.

### 1. Actual Chill

"Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Id. Defendants maintain that there has been no change in Plaintiff's behavior because he continues to criticize the District, and his Complaint specifically includes

allegations that Plaintiff "regularly appears on a television program on public access, often commenting on issues facing the School District" and "often speaks at community meetings regarding racial issues within the School District." (Am. Compl. ¶¶ 13-14.)

Plaintiff responds that there has been a change in his behavior, and therefore an actual chill, because he no longer attends Board meetings. (Pl.'s Opp., Docket Entry 17, at 11 ("[S]ince Jones could not attend the December 14, 2011 meeting, and has not attended any school board meetings since, his First Amendment rights were actually chilled.").) However, the Amended Complaint does not include any allegation that Plaintiff has not attended Board meetings since Defendants' conduct. Rather, Plaintiff raises this allegation for the first time in the SAC. Applying motion to dismiss standards, the Court finds that Plaintiff should be permitted to amend the Complaint to include the allegation that he has not attended Board meetings after Defendants' conduct.

Initially, the Court notes that the fact that Plaintiff has continued to criticize the District does not preclude a finding of "actual chill." For example, in Bartels v. Incorporated Village of Lloyd, the Court addressed a similar issue on a motion for summary judgment. 751 F. Supp. 2d 387 (E.D.N.Y. 2010). There, plaintiff continued to voice his

concerns and complaints, including in various media outlets. Id. at 401. The plaintiff also asserted, however, that he stopped attending Village board meetings after the alleged retaliatory conduct. Id. The court found that the plaintiff raised a question of material fact as to whether his First Amendment rights were actually chilled. Id. Similarly, here, although Plaintiff has continued his criticism of the District in certain respects, he alleges that he "has ceased using other forums and methods." Id.

Moreover, Defendants' assertion that Plaintiff fails to allege that he attended Board meetings in the past does not persuade the Court that the First Amendment retaliation claim should be dismissed. Plaintiff alleges that had planned on attending the December 2011 Board meeting, that Defendants threatened him with arrest if he attended, and that Plaintiff has not attended a Board meeting since. At this stage of the litigation, Plaintiff has stated a plausible claim. Contra MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010) (plaintiff had not set forth any factual allegations that he desired to exercise his First Amendment rights but was chilled); Mangano v. Cambariere, No. 04-CV-4980, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007) ("Here, plaintiff fails to proffer evidence of even one example of a situation in which she desired to exercise her First Amendment

rights but was chilled by defendants' alleged actions."). As such, Defendants' motion to dismiss Plaintiff's First Amendment claim based upon lack of actual chill is DENIED.

### 2. Substantially Motivated by Plaintiff's Speech

In addition to actual chill, Defendants also assert that Plaintiff's First Amendment retaliation claim should be dismissed because Plaintiff cannot show that Defendants' actions were substantially motivated by Plaintiff's speech. The Court, however, cannot decide this issue at the motion to dismiss stage. "Such matters [as defendants' motivation] are required only to be 'averred generally' in a complaint, and need not be pled with specificity." Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 240-41 (E.D.N.Y. 2009). Indeed, alleging motivation with specificity would be difficult. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 195 (2d Cir. 1994). Thus, Defendants' motion to dismiss Plaintiff's First Amendment on this ground is DENIED.

### 3. Discipline of Plaintiff's Daughter

Finally, Defendants maintain that Plaintiff cannot state a retaliation claim based on the discipline of his daughter. More specifically, they argue that "Plaintiff's contrived allegation that the District suspended his daughter, not to punish her for his speech, but to punish him for his speech, is a self-serving attempt to bypass his lack of standing

to assert his own claims for her suspension." (Defs.' Br., Docket Entry 15-3, at 9 (emphasis in original).) Plaintiff responds that he "is not seeking to assert a claim for his daughter's injuries, but is alleging that the punishment of his daughter was part of the retaliation directed at [Plaintiff]." (Pl.'s Opp. Br., Docket Entry 17, at 11.)

Typically, the plaintiff alleging a First Amendment retaliation claim is the same individual against whom the defendant took adverse action; this is particularly so where, as here, the retaliatory conduct allegedly infringes upon the right to intimate association. See Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999) (plaintiff alleged that he was fired in retaliation for his wife's speech). That this is the usual scenario, however, does not persuade the Court that Plaintiff cannot bring his First Amendment retaliation claim as alleged. Plaintiff's claim at least plausibly asserts that he engaged in First Amendment speech, retaliatory actions were taken to punish him, and his speech was chilled.

In support of their assertion that Plaintiff "contrived" a First Amendment retaliation claim, Defendants cite only to Garten v. Hochman, No. 08-CV-9425, 2010 WL 2465479, at *1 (S.D.N.Y. June 16, 2010). There, plaintiff James Garten brought an action against defendants Jere Hochman and the Bedford Central School District asserting claims under 42 U.S.C.

11

§ 1983 for violations of his First and Fourteenth Amendment right to intimate association and his First Amendment right to free speech. Garten argued, _inter_ _alia_, that defendants retaliated against him by reassigning his children to another school. _Id._ at *4. The court rejected that argument, but not because Garten lacked standing. Rather, the court rejected Garten's claim because it was conclusory and Garten alleged no factual support for his assertion. _Id._ In contrast here, Plaintiff plausibly suggests that Defendants' conduct was in retaliation for his First Amendment speech. (See, e.g., Am. Compl. ¶ 21 (alleging that Plaintiff received a letter stating that he is not permitted on District property immediately after he indicated his intention to speak at the Board meeting).) In any event, the Court declines to dismiss Plaintiff's First Amendment retaliation claim based upon suspension of his daughter at this stage in the litigation.

Accordingly, Plaintiff's motion to amend the Complaint to include allegations that he has not attended school board meetings is GRANTED, and Defendants' motion to dismiss the First Amendment retaliation claim is DENIED.

B.  Intimate Association

Relatedly, Plaintiff alleges that Defendants interfered with his right to intimate association. In essence, Plaintiff alleges that Defendants' retaliatory conduct in

suspending his daughter interfered with Plaintiff's right to associate with her. "The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." <u>Chi Iota Colony of Alpha Epsilon Pi Fraternity v. C.U.N.Y.</u>, 502 F.3d 136, 143 (2d Cir. 2007).[2]

The right to intimate association includes two types of associational rights: "an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." <u>Econ. Opportunity Comm'n of Nassau Cnty., Inc. v. Cnty. of Nassau</u>, 106 F. Supp. 2d 433, 439 (E.D.N.Y. 2000). Ultimately, "[t]o determine whether a governmental rule unconstitutionally infringes on an associational freedom, courts balance the strength of the associational interest in resisting governmental interference with the state's justification for the interference." <u>Toussie v. Cnty. of Suffolk</u>, 806 F. Supp. 2d 558, 584 (E.D.N.Y. 2011). Here, the associational interest, the

_____

[2] Such claims may be analyzed under the First or Fourteenth Amendment. However, Plaintiff, correctly, does not address this claim under the Fourteenth Amendment or substantive due process rubric. <u>See</u> <u>Sutton v. Vill. of Valley Stream, N.Y.</u>, 96 F. Supp. 2d 189, 192 (E.D.N.Y. 2000) ("Where . . . there is a claim that the exercise of one spouse's First Amendment right harms a right of intimate association, that right was held to be properly analyzed as the deprivation of a right under the First Amendment.").

relationship between parent and child, is one that courts have recognized as protected. See Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002); Sutton, 96 F. Supp. 2d at 193.

Defendants argue that the intimate association claim should be dismissed because "[t]here are no factual allegations suggesting that the suspension of Damalii Jones 'had the likely effect of ending' plaintiff's relationship with her, was motivated by a desire to end their relationship, or constituted an arbitrary and undue intrusion by the state." (Ds. Br. at 11-12.) Plaintiff alleges, though, that Defendants actions were taken with the intent to retaliate against Plaintiff and damage his relationship with his daughter. (Am. Compl. ¶ 31.) Taking this allegation as true, as the Court must on a motion to dismiss, Plaintiff's intimate association claim survives.

At this stage, then, Plaintiff has adequately pled an intimate association claim, and Defendants' motion to dismiss said claim is DENIED.

C.  Freedom of Speech

In addition to the aforementioned bases for a First Amendment claim, Plaintiff's opposition to the motion to dismiss also asserts that school board meetings are a "public forum" and Defendants' restrictions on his speech in said forum were not reasonable time, place, and manner restrictions. (Pl.'s Opp. Br. at 12-13.) Neither Plaintiff's Amended Complaint nor the

proposed SAC make any allegation relating to unconstitutional time, place, and manner restrictions. While both complaints make specific reference to Defendants' alleged retaliatory conduct, there are no allegations that would even hint at the fact that Plaintiff intends to bring a First Amendment claim based on unconstitutional restrictions.

The first inquiry into such a claim is the nature of the forum. See M.B. ex rel. Martin v. Liverpool Cent. Sch. Dist., 487 F. Supp. 2d 117, 131 (N.D.N.Y. 2007) ("The level of judicial scrutiny depends on the nature of the forum in which the speech occurs."). Although the Amended Complaint refers to school board meetings as public, there are no allegations as to whether the forum is alleged to be a traditional public forum, a designated public forum, or a limited public forum. See id. (describing different fora). Similarly, there are no allegations as to the level of judicial scrutiny that the Court should apply given the type of forum. Typically, school board meetings are limited public fora. See id. at 132 (providing open school board meetings as an example of a limited public forum); accord Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y., N.Y. & Vicinity AFL-CIO v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002). "Reasonable time, place and manner restrictions on speech in limited public fora comport with the Constitution so long as they are content-

neutral, serve a significant government interest and leave open alternative channels for expression." <u>Devine v. Vill. of Port Jefferson</u>, 849 F. Supp. 185, 190 (E.D.N.Y. 1994).

Neither the Amended Complaint nor the proposed SAC addresses any of these issues. Plaintiff is not <u>pro</u> <u>se</u>, and therefore not entitled to a liberal reading of the Complaint. See <u>Nat'l Gear & Piston, Inc. v. Cummins Power Sys., L.L.C.</u>, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012). Thus, the Court does not read the Amended Complaint or the proposed SAC to allege a claim in this regard.

III. <u>Due Process</u>[3]

Plaintiff summarizes his due process claims as follows:

> Jones was barred from attending the December 14, 2011 school board meeting and was otherwise excluded from School District property that is made accessible to the public based on some unspecified "historic" reason. Jones was never given notice and an opportunity to be heard prior to the institution of this ban. Accordingly, Jones

---

[3] The Court notes that Plaintiff's due process claim rests solely upon the claim that he was denied due process because he was not provided notice and an opportunity to be heard prior to the institution of his ban from District property. (<u>See</u> Pl.'s Br. at 14.) To the extent Plaintiff alleges a lack of process surrounding his daughter's suspension or in any other regard, Plaintiff has abandoned these claims as they were not included in his opposition. <u>Adams v. N.Y.S. Educ. Dep't</u>, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (claim deemed abandoned because plaintiff did not respond to, or even mention, claim in opposition to defendants' motion to dismiss).

> has been deprived of a liberty interest
> without any process whatsoever.

(Pl.'s Opp. Br. at 14.)

In order to sufficiently allege a due process claim, whether procedural or substantive, a plaintiff must first allege a protected liberty or property interest. <u>See</u> <u>Cohn v. New Paltz Cent. Sch. Dist.</u>, 363 F. Supp. 2d 421, 432 (N.D.N.Y. 2005). Here, the alleged protected interest is Plaintiff's access to public school grounds. (<u>See</u> Stern Decl. Ex. C.[4])

Access to school grounds, however, is not a protected liberty or property interest. <u>See</u> <u>Pearlman v. Cooperstown Cent. Sch. Dist.</u>, No. 01-CV-0504, 2003 WL 23723827, at *3 (N.D.N.Y. June 11, 2003) ("Plaintiff does not . . . cite to any state law or authority granting him unfettered access to school property, either as a citizen or a parent."); <u>Hone v. Cortland City Sch. Dist.</u>, 985 F. Supp. 262, 272 (N.D.N.Y. 1997) ("Looking to New York State law, the court can find no support for the proposition that Plaintiff enjoyed any right of access to school property."); <u>Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.</u>, No. 93-CV-1924, 1993 WL 762110, at *6 (E.D.N.Y. Dec. 10,

---

[4] Plaintiff agrees that the letters that comprise Exhibit C of the Stern Declaration are incorporated into the Amended Complaint and therefore may be considered by the Court on a motion to dismiss.

1993) ("Here, state law does not give any property or liberty interest to the plaintiff to enter the school grounds.").

Accordingly, Defendants' motion to dismiss Plaintiff's due process claim is GRANTED, and Plaintiff's claim for deprivation of due process is DISMISSED WITH PREJUDICE.

## IV. Equal Protection

Plaintiff also alleges that Defendants violated his right to equal protection because Defendants required that Plaintiff receive advance notice before entering school grounds, but did not impose such a requirement on any other resident of the District. "The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011). Here, Plaintiff does not allege to be a member of a protected class, and therefore may proceed under one of two equal protection theories: selective enforcement or "class of one." Id.

In order to adequately allege a selective enforcement claim, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of

<u>Southampton</u>, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (internal quotation marks and citations omitted). Alternatively, where a plaintiff does not plead selective treatment based upon impermissible considerations, he can also allege a "class-of-one" equal protection claim. <u>Id.</u> "In order to adequately allege an equal protection claim on a 'class of one' theory, a plaintiff must demonstrate that: (1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'" <u>Vaher v. Town of Organgetown, N.Y.</u>, --- F. Supp. 2d ----, 2013 WL 42415, at *19 (S.D.N.Y. Jan. 2, 2013) (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

In the case at bar, Plaintiff apparently brings his equal protection claim solely under a selective enforcement theory. (Pl.'s Opp. Br. at 15-16.) According to Defendants, Plaintiff has not adequately alleged such a claim because he has not sufficiently pled the existence of others to whom he is "similarly situated." Courts in this Circuit are split regarding the definition of "similarly situated" in selective enforcement and class-of-one cases. Some courts have held that the definitions are the same in both cases, and the plaintiff must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a

comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury, No. 09-CV-5195, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted) (collecting cases). Other courts have applied a somewhat less stringent standard in selective enforcement cases, requiring "plaintiffs to show that plaintiff and comparators were 'similarly situated in all material respects,' or that 'a prudent person, looking objectively at the incidents, would think them roughly equivalent.'" Missere, 826 F. Supp. 2d at 561 (quoting Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)).

Even applying the less stringent standard, Plaintiff has failed to adequately allege others "similarly situated." Plaintiff alleges, in conclusory fashion, that he was treated differently from "all other similarly situated residents of the School District." (Am. Compl. ¶ 31.) See Vaher, 2013 WL 42415, at *19 (naked assertion of differential treatment was insufficient to survive a motion to dismiss); D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F. Supp.

2d 119, 128 (E.D.N.Y. 2005) ("Plaintiff's allegations of selective treatment are wholly conclusory, and such conclusory allegations of selective treatment are insufficient to defeat a motion to dismiss."). This allegation, without more, does not "allege facts showing that he is similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment." Missere, 826 F. Supp. 2d at 561. "While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Vaher, 2013 WL 42415, at *20 (internal quotation omitted). Plaintiff's allegation comparing himself to all others in the District simply does not provide enough to allow a jury to do so. Accordingly, Plaintiff's equal protection claim is DISMISSED. Moreover, as Plaintiff's equal protection claim as alleged in the SAC is nearly identical to that alleged in the Amended Complaint, Plaintiff's motion to amend the Amended Complaint in this regard is DENIED.

V.  Individual Liability

     Defendants further argue that the individual defendants should be dismissed from this action because Plaintiff fails to allege their personal involvement and because

they are entitled to qualified immunity. To state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). The Supreme Court held in Ashcroft v. Iqbal that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010). With these standards in mind, the Court considers Plaintiff's claims against the individual defendants.

First, Defendants do not dispute the personal involvement of Defendant Dion. Accordingly, Dion remains a defendant in this action.

Second, Plaintiff's allegations against Defendant Pashken stem from his suspension of Plaintiff's daughter Damalii. In arguing for dismissal of Pashken, Defendants assume that the Court would dismiss Plaintiff's retaliation/intimate association claims. The Court, however, has declined to do so. According to Plaintiff, Pashken was personally involved in

suspending Damalii, allegedly in retaliation for Plaintiff's speech, which harmed Plaintiff's right to intimate association. (Am. Compl. ¶ 26.) Thus, Plaintiff has adequately alleged Pashken's personal involvement, and Defendants' motion to dismiss Pashken is DENIED.

Third, Defendants seek to dismiss Plaintiff's claims against Holman because, they say, there are no allegations that she played any role in adopting the alleged policy placing prohibitions on Plaintiff's ability to enter District property. The Amended Complaint, however, specifically alleges that "when defendant Holman was superintendent, [she] adopted a School District policy barring plaintiff from School District property." (Am. Compl. ¶ 22.) Further, a plaintiff may satisfy his burden of alleging personal involvement by alleging that the individual defendant created a policy or custom under which unconstitutional practices occurred. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Thus, Plaintiff has sufficiently pled Holman's personal involvement, and Defendants' motion to dismiss Holman is DENIED.[5]

---

[5] Defendants also argue that the policy allegedly adopted by Holman had been in place since the 1990s, and therefore Plaintiff's claim or claims against her are time-barred. The statute of limitations for federal claims pursuant to 42 U.S.C. § 1983 is three years. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997). The Amended Complaint simply alleges, though, that Holman adopted the policy while Superintendent of the District. (Am. Compl. ¶ 22.) Even incorporating by reference

In so far as Defendants assert qualified immunity, their motion to dismiss is likewise DENIED. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). However, even if a defendant's conduct was objectively reasonable, where a plaintiff alleges an unconstitutional motivation, he may be denied qualified immunity. See Sheppard v. Beerman, 94 F. 3d 823, 828 (2d Cir. 1996). Moreover, although a qualified immunity defense should be asserted as soon as possible, such defense "faces a formidable hurdle when advanced at such an early stage in the proceedings." Cathedral Church of the Intercessor v. Inc. Vill. of Malverne, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). Given Plaintiff's allegations regarding impermissible motive, and the factual issues surrounding this inquiry, Defendants' motion to dismiss on qualified immunity grounds is DENIED.

---

the correspondence between Plaintiff and Defendants regarding this alleged policy (see Stern Decl. Ex. C) it is unclear exactly when it was adopted, whether it was indeed a policy of the District, and if so how long it had been in place. The Court therefore declines to decide this issue on a motion to dismiss.

VI.  Monell Claim against the District

Defendants also move to dismiss the claims against the District.  To prevail on a Section 1983 claim against a municipality, a plaintiff must show "an injury to a constitutionally protected right . . . that . . . was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.'"  Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008)); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under Monell."  Booker v. Bd. of Educ., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002).

The District asserts that Plaintiff's allegations regarding a policy or practice are conclusory and insufficient.  The Amended Complaint, though, alleges that Holman adopted a retaliatory policy banning Plaintiff from District property and that Dion continued to implement this policy.  (Am. Compl. ¶¶ 21, 22.)  Simply put, Plaintiff alleges "facts from which it could be plausibly inferred that such a custom or policy caused" the alleged violation.  Harris v. Westchester Cnty. Dep't of

_Corr._, No. 06-CV-2011, 2008 WL 953616, at *11 (S.D.N.Y. Apr. 3, 2008). Accordingly, the Defendants' motion to dismiss Plaintiff's Section 1983 claims against the District based upon _Monell_ liability is DENIED.

VII. <u>State Law Claims</u>

Defendants also move to dismiss Plaintiff's state law claims. Defendants assert a number of arguments in this regard, but for the reasons specified below, the Court agrees with Defendants, and Plaintiff's state law claims are DISMISSED WITH PREJUDICE.

As a preliminary matter, Plaintiff's state constitutional equal protection and due process claims are dismissed for the same reasons as Plaintiff's equal protection and due process claims under the U.S. Constitution. See <u>Prince v. Cnty. of Nassau</u>, 837 F. Supp. 2d 71, 107-08 (E.D.N.Y. 2011). The Court, however, has primarily left intact Plaintiff's First Amendment claims. As Defendants correctly, note, though, "various federal courts in this circuit have held that 'there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983.'" <u>Krug v. Cnty. of Rennselaer</u>, 559 F. Supp. 2d 223, 248 (N.D.N.Y. 2008) (quoting <u>Clayton v. City of Poughkeepsie</u>, No. 06-CV-4881, 2007 WL 2154196, at *7 (S.D.N.Y. June 21, 2007)); <u>G.D.S. ex rel. Slade v. Northport-East Northport Union Free Sch. Dist.</u>, --- F.

26

Supp. 2d ----, No. 12-CV-2191, 2012 WL 6734686, at *10 (E.D.N.Y. Dec. 22, 2012); see also Fishman v. Cnty. of Nassau, No. 10-CV-3231, 2011 WL 3919713, *10 (E.D.N.Y. Sept. 7, 2011) (dismissing state constitution free speech claim); Mangano, 2007 WL 2846418 at *1 (same). As Plaintiff has a proper remedy under Section 1983, Plaintiff's retaliation and inmate association claims under the state constitution are DISMISSED WITH PREJUDICE.

Plaintiff's remaining state law claim for intentional infliction of emotional distress is also DISMISSED. "A claim for intentional infliction of emotional distress . . . requires plaintiffs to plead (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." TC v. Valley Central Sch. Dist., 777 F. Supp. 2d 577, 604 (S.D.N.Y. 2011). Defendants assert that Plaintiff has not alleged sufficiently "extreme and outrageous conduct." The Court agrees.

Plaintiff maintains that he has alleged "extreme and outrageous conduct" because Defendants directed their actions toward his daughter and because they asserted that Plaintiff is guilty of some unspecified wrong. "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so

outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (internal quotation omitted). Defendants' alleged actions simply do not rise to this level. See Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 111 (E.D.N.Y. 2011) (claims of sexual harassment and retaliatory conduct in employment context do not rise to sufficient level); TC, 777 F. Supp. 2d at 605 (defamatory statements generally not intentional infliction of emotional distress); Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 372-73 (W.D.N.Y. 2010) ("[F]alse accusations of criminal conduct generally do not rise to the level of extreme and outrageous conduct that is necessary to support an IIED claim."). As such, Defendants' motion to dismiss Plaintiff's state law claims is GRANTED.

VIII.  New York State Public Officer's Law

Finally, Plaintiff's proposed SAC seeks to add a claim for violation of New York State Public Officer's Law, Article 7. (See Murray Aff., Docket Entry 16, Ex. A.)

That law provides in relevant part that "[e]very meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section ninety-

five of this article." N.Y. PUB. OFF. LAW § 103(a). With respect to enforcement, the Public Officer's Law provides that "[a]ny aggrieved person shall have standing to enforce the provisions of this article against a public body by the commencement of a proceeding pursuant to article seventy-eight of the civil practice law and rules, or an action for declaratory judgment and injunctive relief." Id. § 107(1). Here, Plaintiff seeks to add a claim for monetary damages for Defendants' alleged violation of this law. Nowhere in the enforcement provisions of the Public Officers Law does it provide for monetary relief, except insofar as it allows for reasonable costs and attorney's fees. Plaintiff does not respond to Defendants' argument regarding monetary relief and, in any event, the statutory language is clear. Thus, to the extent that Plaintiff seeks monetary relief for violation of the Public Officer's Law, his motion to add this claim is DENIED.

However, Plaintiff also seeks injunctive relief for violation of the Public Officer's Law. To the extent that Plaintiff's motion to amend seeks to add a claim for injunctive relief under the Public Officer's Law, the motion is GRANTED. Contrary to Defendants' suggestion, an Article 78 proceeding does not appear to be the sole means of adjudicating such a claim. As the statute makes clear, a plaintiff may bring a claim for violation of the Public Officer's Law through an

Article 78 proceeding "or [in] an action for declaratory judgment and injunctive relief." Id. § 107(1).

Furthermore, the Court agrees with Plaintiff's contention that this claim is public in nature and therefore New York Education Law § 3813(1) does not require that Plaintiff include it in his notice of a claim. See Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp. 2d 135, 147-48 (N.D.N.Y. 2011) (noting public interest exception to notice requirement). Here, of course, the beneficiary of the Public Officer's Law is the public. See Matter of Mary's Bus Serv. v. Rondout Val. Cent. Sch. Dist., 238 A.D. 2d 829, 831, 656 N.Y.S.2d 534, 117 Ed. L. Rep. 1096 (3d Dep't 1997). Thus, Plaintiff does not seek solely the enforcement of a private right, and a notice is not required. See id.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's cross-motion to amend is GRANTED IN PART and DENIED IN PART. Accordingly, the Clerk of the Court is directed to docket the proposed Second Amended Complaint as the operative Second Amended Complaint. However, the only remaining claims are Plaintiff's Section 1983 claims for First Amendment retaliation and First Amendment intimate association as well as Plaintiff's claim for injunctive relief under the Public Officer's Law.

Thus, the Second Amended Complaint will govern only insofar as the allegations pertain to these claims.

                              SO ORDERED.


                              /s/ JOANNA SEYBERT_____
                              Joanna Seybert, U.S.D.J.
Dated:      May __28__, 2013
            Central Islip, New York