UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

CHARLES W. JONES,

                                                    Plaintiff,

            - against -

BAY SHORE UNION FREE SCHOOL DISTRICT;            **SECOND**
PETER J. DION, Individually and as Superintendent of   **AMENDED COMPLAINT**
the Bay Shore Union Free School District; EVELYN     **WITH JURY DEMAND**
BLOISE HOLMAN, Individually and as the former
Superintendent of the Bay Shore Union Free School     Docket No. CV-12-4051 (JS) (GRB)
District; and ROBERT PASHKEN, Individually and as
Principal of Bay Shore High School,

                                                    Defendants.
-------------------------------------------------------------------- X

            Plaintiff, by his attorney, Ruskin Moscou Faltischek, P.C., as and for his Second

Amended Complaint herein, alleges:

### Jurisdiction

            1.      This case arises under 42 U.S.C. §§1983 and 1988, the First and Fourteenth

Amendments to the United States Constitution, as well as the laws and Constitution of the State

of New York.  Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

### Venue

            2.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events

giving rise to this action occurred in this District, and all of the parties reside in this District.

### Parties

            3.      Plaintiff Charles W. Jones ("Jones") is a lifelong resident of the Bay Shore Union

Free School District and currently resides in Suffolk County, New York.

4.      The defendant Bay Shore Union Free School District ("School District") is a school district organized under the laws of the State of New York.

5.      Upon information and belief, defendant Peter J. Dion ("Dion") is the Superintendent of the School District.

6.      Upon information and belief, defendant Evelyn Bloise Holman ("Holman") is a former Superintendent of the School District.

7.      Upon information and belief, defendant Robert Pashken ("Pashken") is the Principal of Bay Shore High School, located within the School District.

Facts

8.      Jones is a lifelong resident of the School District and is a graduate of Bay Shore High School.

9.      Jones has a masters degree in social welfare from Adelphi University, and extensive experience providing counseling services to at risk individuals, particularly minority students within the School District.

10.      In or about 1998, Jones formed a not-for-profit corporation, Long Island Community Advocates Coalition, Inc. ("LICAC"), which is a tax exempt organization under the Internal Revenue Code §501(c)(3).

11.      LICAC was formed to be an advocate for minority students attending schools within the School District, as well as to provide counseling to individuals suffering from substance abuse and other hardships.

12.      As part of their activities, LICAC, and Jones individually, address issues with regard to minority students attending schools within the School District, and in particular,

discriminatory conduct by the School District personnel toward minority students, including the disproportionate amount of suspensions given to minority children.

13.     In addition to his activities through LICAC, Jones also regularly appears on a television program on public access, often commenting on issues facing the School District, and in particular discriminatory conduct of School District personnel toward minority students.

14.     In addition, Jones often speaks at community meetings regarding racial issues within the School District, including the lack of hiring minority personnel and the disproportionate disciplinary actions against minority students.

15.     Jones also urged ministers from local churches to correspond with the School District requesting that the School District hire African American teachers and provide after hours extra curricular programs within the School District for minority students.

16.     Jones also provided counseling to minority students, and acted as their advocate within the School District.

17.     Further, in 2011, Jones met with defendant Dion and discussed the disproportionate punishment given to minority students by the School District, and provided Dion with a national report regarding this issue.

18.     As a result of his activities, Jones became well known within the community, and by School District personnel, including the individual defendants named herein, as an outspoken critic of the School District and its administrative personnel.

19.     Further, because of his outspoken criticism of the School District and its personnel, the defendants subjected Jones to retaliation by precluding him from attending public Board of Education meetings, precluding him from the property of the School District even though he had a daughter who attended Bay Shore High School, by accusing Jones of

inappropriate conduct while he had been employed by the School District and, in an effort to harm and destroy the intimate association right of plaintiff and his daughter, subjecting his daughter to disproportionate punishment and otherwise harassing her to force Jones to cease his criticism of the School District.

20.    For example, in December 2011, Jones told Dion that he was going to speak at the upcoming Board of Education meeting to be held on December 14, 2011 to request the School District's support for a minority parents organization to encourage the parents of minority students within the School District to become more involved with school activities.

21.    Immediately thereafter, in retaliation for Jones' outspoken criticism of the School District, and based on the content of what Jones proposed to state at the December 14, 2011 school board meeting, Jones received a letter from Dion, on behalf of the School District, stating he was not permitted on the property of the School District, and if he went to the school board meeting, he would be subject to arrest.

22.    The School District's letter also states that the School District, when defendant Holman was Superintendent, adopted a School District policy barring plaintiff from School District property.

23.    As a result of being prohibited from attending school board meetings under threat of arrest, Jones did not attend the December 14, 2011 meeting, and was unable to present his request to the school board.

24.    The School District never provided Jones with any process to contest such a ban, nor was he informed of the specific reasons for such a ban.

25.    Further, although the School District revised its position to state that Jones could come onto School District property provided he received advance permission from Dion, no such

requirement applies to any other resident within the School District, and such restrictions are not permitted under New York State law.

26.     As a result, Jones has not attended any school board meetings.

27.     Also, upon information and belief, defendants sought to harm and injure plaintiff by asserting that plaintiff had engaged in past misconduct while he was an employee of the School District over twenty (20) years ago, while at the same time the School District had permitted another individual to continue his employment with the School District even though he had engaged in inappropriate conduct with a student.

28.     In addition, Jones was retaliated by the School District, Dion and Pashken for his outspoken criticism of the School District's discriminatory practices, and his right to intimate association with family members was harmed, when his daughter, Damalii, was given a principal suspension by Pashken, and was subjected to a superintendent suspension by Dion in or about February 2012.

29.     At that time, Damalii was involved in an altercation with another female individual off school grounds, and while Damalii was not required to be in school.

30.     Initially, Damalii was subjected to a principal's suspension without defendants providing Jones with the required ability to meet with the principal as required by New York's *Education Law*.

31.     Thereafter, Damalii was the subject of a superintendent's hearing where Jones was threatened that if he did not consent to a suspension for the remainder of the school year, the School District would not provide Damalii with home instruction, as was the School District's customary practice, and she would not receive her high school diploma.

32.     Then, when Jones would not consent, the School District relied on the consent of Damalii's mother, who was not Damalii's custodial parent.

33.     As a result, Damalii was prohibited from attending school or participating in her graduation ceremony. These prohibitions were with the intent to retaliate against Jones by damaging his relationship with his daughter, and they in fact caused an alienation between plaintiff and his daughter. Further, Jones is prohibited from the property owned by the School District, and may not freely attend public Board of Education meetings like all other similarly situated residents of the School District.

34.     The individual defendants are and were policy makers on behalf of the School District, and their actions of retaliation against Jones for exercising his first amendment rights, depriving Jones of his due process and equal protection rights guaranteed by the United States Constitution, and depriving plaintiff of his rights guaranteed by the New York State Constitution are policies adopted by the School District.

35.     By reason of defendants' actions, plaintiff has suffered emotional distress, and has been subjected to embarrassment and humiliation within the community.

36.     Jones filed a Notice of Claim against the School District on December 22, 2011.

37.     The School District conducted a hearing, pursuant to General Municipal Law 50-h, on May 21, 2012.

## FIRST CLAIM FOR RELIEF

38.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.     Defendants, under color of law, violated Jones' rights secured by the First and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §1983.

40.     By reason thereof, Jones has been damaged in an amount to be determined, but believed to exceed $1 Million.

## SECOND CLAIM FOR RELIEF

41.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     Defendants, under color of law, deprived plaintiff of his equal protection and due process rights secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. §1983.

43.     By reason thereof, Jones has been damaged in an amount to be determined, but believed to exceed $1 Million.

## THIRD CLAIM FOR RELIEF

44.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     By reason thereof, plaintiff is entitled to recover attorney's fees pursuant to 42 U.S.C. §1988 in an amount to be determined, but believed to exceed $50,000.00.

## FOURTH CLAIM FOR RELIEF

46.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Plaintiff has been deprived of his rights secured by the Constitution of the State of New York.

48.     By reason thereof, plaintiff has been damaged in an amount to be determined, but believed to exceed $1 Million.

## FIFTH CLAIM FOR RELIEF

49.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     Defendants intentionally sought to humiliate plaintiff and cause him emotional distress by falsely alleging wrongful conduct by plaintiff which purportedly occurred over two decades ago, and by defendants' other wrongful conduct set forth herein.

51.     By reason of defendants' intentional infliction upon plaintiff of emotional distress, plaintiff has been damaged in an amount to be determined, but believed to exceed $1 Million.

## SIXTH CLAIM FOR RELIEF

52.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.     Defendants' conduct violated New York State *Public Officer's Law*, Article 7.

54.     By reason thereof, plaintiff has been damaged in an amount to be determined, but believed to exceed $1 Million.

55.     In addition, defendants should be permanently enjoined from prohibiting plaintiff from attending school board meetings, or requiring him to give notice and obtain permission for his attendance.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally:

(a)     for compensatory damages, in an amount to be determined, but believed to exceed $1 Million;

(b)     for attorney's fees, in an amount to be determined, but believed to exceed $50,000;

(c)     permanently enjoining defendants from prohibiting plaintiff from attending public school board meetings, or requiring plaintiff to provide notice and/or obtain permission to attend public meetings.

(d)     the costs and disbursements of this action; and

(e)     such further and other relief as the Court deems appropriate.

Dated: Uniondale, New York
         December 18, 2012

                                        RUSKIN MOSCOU FALTISCHEK, P.C.

                          By: _____
                                        E. Christopher Murray
                                        *Attorney for Plaintiff*
                                        East Tower, 15th Floor
                                        1425 RXR Plaza
                                        Uniondale, New York  11556
                                        (516) 663-6600

559568\1